## McCarthy v. Speed *et al.*

1. Where there is no irregularity or defect in the judgment, or in the execution issued thereon, and persons not parties to the action purchase at the sale, the sale will not be set aside on motion, but the remedy is by an action in the proper Court.

2. Where the plaintiff in the action is one of the purchasers at the sale, it may be set aside, as to him, on motion.

3. Code Civ. Proc. § 5201, provides that, in an action prosecuted or defended by an executor, costs shall be recovered as in an action by and against a person prosecuting or defending in his own right, but such costs may, by the judgment, be chargeable only on the estate, unless the Court shall direct the same to be paid by the plaintiff or defendant personally. Section 5807 of the Probate Code declares that when a judgment is recovered, with costs, against any executor or administrator, he shall be individually liable for such costs, but they must be allowed him in his administration account, unless the suit was prosecuted or defended without just cause. Held, that where the costs are not, by the terms of the judgment, made chargeable on the estate, the executor is personally liable therefor.

4. Where, in an action against a party as executor, plaintiff recovers judgment for costs, and causes the individual property of the executor to be sold in satisfaction thereof, the latter may, in his individual capacity, move to have the sale set aside.

(Opinion filed April 7, 1903.)

Appeal from Circuit Court, Pennington county, Hon. Levi McGee, Judge.

Action by Patrick B. McCarthy against Edward W. Speed, as administrator of William B. Franklin, deceased, and others, including John S. George, executor of John J. Fayel, deceased. Plaintiff had judgment for his costs and disbursements in the Circuit and Supreme Courts, and caused property owned by John S. George individually to be sold in satisfaction thereof.

From an order setting aside the various execution sales, with directions, etc., plaintiff, the sheriff, the clerk of the courts, and certain of the purchasers appeal.   Reversed.

*Charles W. Brown and A. K. Gardner*, for appellants.

The remedy of John S. George and the defendants was by a proper action in court, and not by a motion in this case. Froelich v. Aylward, 11 S. D., 635; Dorsey v. Hall, 5 Dak., 505; 8 Ency. Pl. & Pr. 468; Bryan v. Berry, 8 Cal., 130.

When a judgment is recovered, with costs, against an executor or administrator, he is individually liable for such costs, unless the same are, by the judgment, chargeable only upon the estate or fund represented by him.   §§ 5807, 5201, Comp. Laws; §§ 1031, 1509, Harston's Pr.; Hicox v. Graham, 6 Cal., 169; Stevens v. Railroad, 37 Pac., 146; Reay v. Butler, 33 Pac. 1134; Hardy v. Call, 16 Mass., 530; O'Hear v. Skeeles, 22 Vt., 152; Lynch v. Webster, 14 L. R. A. 696.

CORSON, J.   This is an appeal from an order vacating and setting aside certain execution sales of personal property, and granting certain other relief to John S. George, respondent. On January 13, 1899, judgment was entered in favor of the plaintiff and against the defendants, of which the said George, as executor of the estate of John J. Fayel, was one, whereby it was, among other things, adjudged that the plaintiff recover of the defendants his costs and disbursements in the Circuit and Supreme Courts, agregating $458.35.   Two executions were issued upon this judgment, and three sheriff's sales made thereon.   As to the first sale, it is recited in the abstract that "execution in the usual form was duly issued upon said judgment on the 11th day of February, 1901, and delivered to the

sheriff on said date, who thereafter, and by virtue of said executions, duly levied upon and seized the following described personal property of the said John S. George, to-wit, twenty-six hundred shares of the capital stock of the Holy Terror Mining Company, a corporation." After due and proper notice the sheriff sold said property at public auction to the plaintiff for the aggregate sum of $57, he being the highest bidder therefor. Subsequently, on March 29, 1901, by authority of said execution the sheriff levied upon and seized 25,000 shares of the capital stock of the Holy Terror Mining Company, belonging to the said John S. George, and on April 11, 1901, "duly sold the same at public auction for the aggregate sum of $125 to the purchasers and at the prices following, to-wit: To Charles J. Buell, 10,000 shares, $50; to the plaintiff, 5,000 shares, $25; to John P. McElroy, Jr., 5,000 shares, $25; to Joseph Van Buskirk, 5,000 shares, $25." Subsequently the second execution was issued upon said judgment to said sheriff, who thereafter levied upon and seized 100,000 shares of the capital stock of the said company, belonging to the said John S. George, and thereafter sold the same for $225 to sundry purchasers, one of whom was the plaintiff. The sheriff made due return of such execution as required by law. On June 17, 1901, the attorneys for John S. George served upon the plaintiff and his attorneys, and upon the sheriff and the clerk of the said court, and upon the said several purchasers at said execution sales, a notice to the effect that said John S. George would move the Court on June 25, 1901, for an order vacating and setting aside the said execution sales; said notice stating that said motion would be made upon the judgment, the said several executions and upon all the proceedings connected with said

levies and sales.   This motion was granted, and the Court entered its order vacating and setting aside the said execution sales, and directing and ordering the clerk of the said court below to take said executions, and each of them, from the files of his office, and replace them in the hands of the sheriff, and directing the said clerk "to make restitution of the said judgment upon the proper records of his office." From this order the plaintiff, the sheriff of Pennington county, the clerk of the courts, and certain of the purchasers have appealed to this Court.

In the original action, as before stated, John S. George appears to have been made a party defendant, as one of the executors of the last will and testament of John J. Fayel, deceased, but not in his individual capacity.   The motion, however, was made by John S. George, but not in his capacity of executor.   It is contended by the appellants that the remedy of John S. George was by an action in the proper court, and not by a motion in this case.   In this contention we are inclined to the opinion that the appellants, other than the plaintiff, are correct.   It will be noticed that it is not claimed that there was any irregularity or defect in the judgment or executions, and it will be observed that several of the purchasers were not parties to the action.   It would seem, therefore, upon principle, that parties purchasing under execution sales, when the executions are valid and the proceedings regular, could not be deprived of the property purchased by them, upon motion, in an action to which they are not parties.   And such seems to be the view taken by the courts.   In Bryan v. Berry, 8 Cal. 130, the Supreme Court of California, in discussing this question says:   "It was too late to move to set aside

the execution after the sale, as a part of the property had been purchased by third persons, not parties to the suit. The motion was to set aside the execution and levy; and the effect of this motion, if sustained, would have been to declare void the sales made of the property—as well as that portion sold to third parties as that portion sold to the plaintiff in the execution. In the case of Day v. Graham, 1 Gilman, 435, this question is very fully considered, the authorities reviewed, and the correct doctrine laid down. In that case the court says: 'Upon these authorities, we are of the opinion that when the plaintiff in the execution is the purchaser, and before he conveys to another, the court will set aside the sale, upon motion. But after he conveys to a third person, and when a third person becomes a purchaser, the court will not determine in this summary way questions which may effect the rights of others not before the court, and without opportunity of explaining away those circumstances which might destroy his title." This court, in Froelich v. Aylward, 11 S. D. 635, 80 N. W. 131, lays down substantially the same rule, and quotes with approval the following from the case of Dorsey v. Hall, 5 Dak. 505, 41 N. W. 471: "While a motion to set aside or quash an execution may be made to the court which issued it, for errors and irregularities which affect the writ itself, the same is not true, in the absence of statute, regarding errors and irregularities arising out of the acts of the officer executing the writ."

The same rule, however, does not apply to Patrick B. McCarthy, the plaintiff in the action. He being a party to the action, the motion was properly made to vacate and set aside the sales under the execution as to him, and hence it becomes necessary to determine (1) whether or not the individual prop-

erty of Mr. George could be sold under the judgment rendered against him as one of the executors of the estate of Fayel, deceased; (2) whether or not John S. George could. in his individual capacity, make this motion in the court below, he not. being a party to the action, other than as executor.

It was evidently the theory of the counsel for Mr. George, and was probably adopted by the court, that George, being a defendant as executor, and not in his individual capacity, was not individually liable for the costs in the action, and that the levy upon and sales of his individual property for such costs was illegal and void. It is contended on the part of the appellant, however, that, though the judgment was rendered against said George as executor, he was nevertheless personally liable for the costs of the action, and that the levy upon and sales of his individual property was therefore regular and legal. Our Probate Code and Code of Civil Procedure contain two sections bearing upon this question. Section 5201 in the Code of Civil Procedure under the title of "Costs and Disbursements," reads as follows: "In an action prosecuted or defended by an executor, administrator, trustee of an express trust, or a person expressly authorized by statute, costs shall be recovered, as in an action by and against a person prosecuting. or defending in his own right; but such costs must, by the judgment, be chargeable only upon, or collected of, the estate, fund, or party represented, unless the court shall direct the same to be paid by the plaintiff or defendant personally, for mismanagement or bad faith in such action or defense." And section 5807 in the Probate Code reads as follows: "When a judgment is recovered, with costs, against any executor or administrator, he shall be individually liable for such costs but they must be

allowed him in his administration accounts unless it appears that the suit or proceeding in which the costs were taxed was prosecuted or defended without just cause." Section 5201 is a copy of section 1031 of the Civil Code of Procedure of the state of California, and section 5807 of our Probate Code is substantially the same as section 1509 of the Probate Code of that state. The latter section was in force as early as 1856, and received a construction by the Supreme Court of California in the case of Hicox v. Graham, 6 Cal. 167, by which it was held: "Executors and administrators are individually responsible for costs recovered against them in every case, but they shall be allowed them in their administration accounts, except when it appears that the action has been prosecuted or resisted without just cause." Section 1031 of the Civil Code of Procedure of the state of California, corresponding with 5201 of our Code of Civil Procedure, seems to have been incorporated into the Code of California by the amendment of 1874. In Stevens v. San Francisco & M. P. R. Co., 103 Cal. 252, 37 Pac. 146, the Supreme Court of California, in discussing these two sections, says: "Here the judgment was against the plaintiff, as administratrix, for costs, but such costs were not by the judgment made chargeable only upon the estate, as they might have been under the section [1031] of the code first above quoted. If they had been made so chargeable, the judgment would have contained the following or equivalent words: 'And it is further ordered that said costs be, and the same are hereby, made payable out of the estate of said Joseph Stevens, deceased.' This being so, the plaintiff, under the section of the code last above quoted [1509], was individually liable for the costs, and the defendant was entitled to the execution asked

for.   We see no necessary conflict in the two sections referred to.   When properly construed, each may have full force and effect.   The case of Hicox v. Graham, 6 Cal. 169, is in point.'' In that case the clerk of the court had refused to comply with a demand that he issue execution, and an application to the Circuit Court for an order directing the clerk to issue it was denied; but, as will be seen from the opinion, the Supreme Court held that the motion should have been granted and the execution issued.   The Supreme Court of Vermont seems to have taken the same view in the case of O'Hear v. Skeeles, 22 Vt. 152   In that case the Court says:   ''We believe it was the intention of 'the Legislature to place executors and administrators upon the same footing with other suitors, as it respects their liability for costs which may be adjudged against them, and that in so doing they intended to afford security to the recovering party for costs awarded him, and, by authorizing the administrator to charge the same in his administration account, to subject the propriety of his conduct in incurring the expenditure to the decision of the probate court.   This is calculated to impose a salutary restraint upon administrators, and to guard the estates of deceased persons against heedless expenses in unjustifiable litigation.''   And this seems to be the view adopted by the Supreme Court of Rhode Island, in an exhaustive review of the authorities, in Lynch v. Webster, 17 R. I. 513, 23 Atl. 27, 14 L. R. A. 696; Hardy v. Call, 16 Mass. 530. There seems to be some conflict in the authorities upon this question, but, in view of the fact that the sections of our code referred to were evidently taken from the codes of the state of California, we are inclined to adopt the views of this question taken by that Court.

It appears from the judgment entered in this case against the defendants that costs are not, by the terms of the judgment, made chargeable upon the estate of Fayel, and the said defendant George is therefor individually liable for the same.

The contention that John S. George, not being a party to the suit, except in the capacity of executor of the estate of Fayel, was not entitled to make the motion in this action, is, we think, untenable. It is true that in his individual capacity he was not a party, but we are of the opinion that he was so far connected with the action that, in order to protect his personal interests, it was competent for him to make this motion in his individual capacity.

For the reasons before stated, the order of the Court must be reversed as to John P. McElroy, Joseph VanBuskirk, Cassius M. Leedy, as sheriff of Pennington county, and William P. Baker, as clerk of the courts of the said county; and as to the plaintiff, Patrick B. McCarthy, the order of the Court below is reversed for the reason that the proceedings, including the sales of the property, were regular and legal, so far as this record discloses. The order of the Circuit Court is reversed.